UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINDA M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C19-283-RAJ-MLP <br><br> REPORT AND RECOMMENDATION |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by rejecting the opinions of treating physician Dennis Mann, D.O., Plaintiff's testimony, and the opinion of physical therapist Theodore Becker, Ph.D. (Dkt. # 13 at 1-2.) As discussed below, the Court RECOMMENDS that the Commissioner's final decision be REVERSED and REMANDED for further administrative proceedings.

## II.   BACKGROUND

Plaintiff was born in 1965 and has the equivalent of a high school education. AR at 75. Plaintiff has worked as a bench assembler, and was last gainfully employed in April 2013. AR at 75-71.

REPORT AND RECOMMENDATION - 1

On September 30, 2014, Plaintiff applied for benefits, alleging disability as of April 12, 2014. AR at 57. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. AR at 22. After the ALJ conducted a hearing on August 29, 2016, as well as a supplemental hearing on February 16, 2017, the ALJ issued a decision finding Plaintiff not disabled on May 18, 2017. AR at 19-41.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since April 12, 2013, the alleged onset date.

Step two: Plaintiff has the following severe impairments: history of cerebrovascular accident (CVA), lumbar and cervical spine degenerative disc disease, distal interphalangeal (DIP) and interphalangeal (IP) degenerative joint changes, De Quervain's tenosynovitis, history of lateral epicondylitis, and Morton's neuroma with metatarsalgia.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work, except that she can only occasionally stoop, kneel, and crouch, but never climb, balance, or crawl. She should avoid concentrated exposure to vibration and hazards. She cannot rapidly or repeatedly rotate head from side-to-side as would be necessary to drive, but can turn her head or body as necessary to look side-to-side. She cannot rapidly or repeatedly flex the neck (such as might be required by a surgeon) by moving the head forward or by bending the joint resulting in a decrease of angle, but she is able to flex her neck and use her eyes sufficiently to look down. Similarly, she cannot rapidly or repeatedly extend the neck (such as might be required by an electrician doing overhead work by moving the head backwards or by bending the joint resulting in an increase of angle) but is able to extend neck and use eyes sufficiently to look up.

Plaintiff can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment, and can perform simple duties that can be learned on the job in a short period. She can work in proximity to co-workers but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with co-workers. She would not deal with the general public as in a sales position, or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded.

---

[1] 20 C.F.R. §§ 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

>Step four:  Plaintiff can perform past relevant work as a bench assembler.

>Step five: Alternatively, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as basket filler or egg sorter/handler. Plaintiff is therefore not disabled.

AR at 19-46.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 13-18. After requesting and receiving an extension of time, Plaintiff timely appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.     LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

**A. The ALJ Erred in Evaluating the Opinions of Dennis Mann, D.O.**

   *1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

      2.     *Dennis Mann, D.O.*

Dennis Mann, D.O. has been treating Plaintiff since March 2010 for headache, neck, and back pain. AR at 1411. His treatment notes and opinions span from May 2013 through May 2016. *Id*. at 796-807, 1308-13. Dr. Mann has indicated that "headache, back and neck pain were the crux of why she came to my office. She had been in manual labor type work for a long time, and she was starting to have some significant musculoskeletal problems." *Id*. at 1412. Plaintiff stopped working in April 2013 as a bench assembler. *Id*. at 807. In June 2013, Plaintiff was admitted for symptoms of leg and arm symptoms, and an MRI was consistent with a stroke. *Id*. at 553-74. After the stroke, Plaintiff was not approved for further epidural steroid injections by her pain management doctor for treatment of her back and neck pain because of the aspirin she was taking to prevent further stroke. *Id*. at 318, 802, 1131, 1193.

The ALJ discussed Dr. Mann's March 2014, August 2015, March 2016, and May 2016 opinions that Plaintiff was incapable of any type of full-time employment, but only afforded them "slight weight." AR at 37-38. Specifically, the ALJ noted that Dr. Mann "specifically stated that the claimant had return to work issues based on emotional limitations, including poor concentration and focus and inability to interact with the public because of emotional issues, post-stroke cognitive functions, and physical limitations. However, he noted himself that he based some of his opinions on her own subjective perceptions, some of which he admitted could not completely be supported by objective findings." *Id*. at 37. In addition, the ALJ asserted that "treatment records, including his own reports, fail to reveal the type of significant clinical or laboratory abnormalities one would expect if the claimant had such limitations or were in fact disabled" because at times Plaintiff exhibited a normal range of motion. *Id*. With respect to Plaintiff's mental functioning, the ALJ pointed out that "[p]hysical and mental status reports also regularly fail to mention any significant abnormalities in mental functioning." *Id.* Finally, the ALJ found that although "Dr. Mann opined on her mental health and functioning related to a stroke . . . he is only a family practitioner . . . Dr. Mann also admitted his professional abilities to rate physical capacities with regard to return to work is somewhat limited by his professional expertise in those areas." *Id*. at 38.

Plaintiff does not specifically challenge the ALJ's reasons for rejecting Dr. Mann's opinions that the ALJ addressed in the decision, *i.e*., several of Dr. Mann's general opinions that Plaintiff was not capable of any type of full-time employment or would have problems focusing and interacting with the public. However, Plaintiff contends that the ALJ committed harmful error by failing to address four additional opinions by Dr. Mann concerning specific physical limitations which, if credited, would prevent Plaintiff from performing the jobs cited by the ALJ

at steps four and five. (Dkt. # 13 at 7; Dkt.# 15 at 2 (citing AR at 894-96, 1210, 1219-20, 1231-32).)

First, Plaintiff points out that Dr. Mann completed a group disability insurance report about three months after Plaintiff stopped working indicating she was still recovering from the stroke in June and also had chronic C6 radiculopathy on the right which limited her to only occasionally lifting up to 10 pounds, handling, fingering, and reaching. AR at 1219-20. Because the ALJ's RFC assessment did not limit Plaintiff to lifting 10 pounds, or limit Plaintiff's ability to handle or finger in any way (AR at 31), Plaintiff argues the ALJ erred by failing to either adopt this opinion or articulating legally sufficient reasons for rejecting it. Dr. Mann completed a second group disability insurance capacity questionnaire in April 2015 indicating that Plaintiff could only stand/walk a half-hour at a time, sit intermittently up to four hours per day but only a half hour at a time, occasionally lift up to 10 pounds, but could never lift up to 20 pounds. AR at 1231. By contrast, the ALJ found Plaintiff could perform light work, which generally requires sitting or standing most of the workday, and occasionally lifting up to 20 pounds. *See* 20 C.F.R. 404.1567(b) ("Light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing[.]"). Thus, Plaintiff asserts the ALJ erred by failing to provide legally sufficient reasons for rejecting these two opinions by Dr. Mann, which conflicted with the ALJ's RFC assessment in this case.

Similarly, in April 2014, Dr. Mann completed a check-box work capacity evaluation form for Plaintiff's long-term disability company in which he indicated she could only occasionally reach, and perform repetitive activities using her shoulders and neck. AR at 1210-11. As the ALJ's RFC assessment did not find Plaintiff was limited to occasional reaching, or

that she needed to avoid repetitive activities using her shoulders, Plaintiff contends the ALJ erred by failing to provide legally sufficient reasons for rejecting this opinion. Finally, in June 2015, Dr. Mann completed a physical capacities evaluation indicating that Plaintiff could lift up to 10 pounds occasionally, but never more than 10 pounds, and she could only occasionally reach above shoulder level with her left arm, but could never climb, stoop, kneel, crouch, or crawl. *Id*. at 895. He wrote: "multiple musculoskeletal issues – cervical and lumbar spondylosis, thoracic myofascial pain [?] s/p R sided CVA (stroke)." AR at 895. He found she had fatigue, pain, deconditioning, and depression which would prevent her from working full time even in a sedentary position. *Id*. at 896-97. As with the other opinions described above, Plaintiff argues these opinions were neither discussed nor addressed by the ALJ.

The Court agrees with Plaintiff that the ALJ's failure to articulate legally sufficient reasons for rejecting these four opinions was harmful error, even if the ALJ's reasons for rejecting Dr. Mann's other opinions discussed in the written decision are specific and legitimate. *See* 20 C.F.R. 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); SSR 96-8p ("The ALJ must always consider and address medical source opinion. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").[3] These four opinions the ALJ failed to acknowledge concerned Plaintiff's ability to lift more than 10 pounds, and only occasionally reach, handle, and finger.  These limitations are directly in conflict with the ALJ's RFC assessment in this case, as well as the requirements of the jobs cited by the ALJ at steps four and five.

---

[3] By contrast, for claims filed after March 27, 2017, the ALJ is not required to reject each opinion provided by a medical source but can consider all of the opinions together in a single analysis. See 20 CFR 404.1520c(b)(1).

Specifically, Plaintiff's past work identified by the ALJ at step four, bench assembler, involves frequent reaching, handling, and fingering. *See* DOT 706.684-022, *available at* 1991 WL 679050. The jobs identified by the ALJ at step five, basket filler and egg sorter/handler, also involve some combination of at least frequent reaching, handling, or fingering. *See* DOT 529.687-010, *available at* 1991 WL 674737 (basket filler requires frequent reaching, handling, but no fingering); DOT 529.687-074, *available at* 1991 WL 674753 (egg handler requiring constant reaching, handling, and fingering). All three of these jobs are also light jobs, which is defined as requiring an individual to lift up to twenty (20) pounds occasionally. As the ALJ failed to adopt Dr. Mann's four opinions finding Plaintiff limited to lifting only 10 pounds with additional limitations in reaching, handling, and fingering, the ALJ was required to articulate specific and legitimate reasons for rejecting these opinions. *See Lester*, 81 F.3d at 830-31.

Although the Commissioner asserts in a conclusory manner that the ALJ "ensured the jobs Plaintiff could perform, such as basket-filler or egg sorter/handler, only required occasional lifting and shoulder raising," the Commissioner cites no authority for this proposition. (Dkt. # 14 at 5.) The Court also finds no basis for such a conclusion in the DOT description of occupations of bench assembler, basket-filler, or egg sorter/handler. Accordingly, this case must be REVERSED and REMANDED for further administrative proceedings for the ALJ to re-evaluate Dr. Mann's opinions and provide legally sufficient reasons for rejecting his conclusions, should such a conclusion be warranted.

**B. The ALJ Erred in Rejecting Plaintiff's Testimony**

1. *Legal Standard for Evaluating the Plaintiff's Testimony*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial

evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

    2.  *On Remand, the ALJ Should Re-Evaluate Plaintiff's Testimony*

The ALJ found Plaintiff's testimony was less than fully credible because (1) her

treatment had been routine and conservative and her use of medication "does not suggest the presence of impairments that are more limiting than found in his decision;" (2) laboratory studies and self-reports showed Plaintiff used marijuana and multiple non-prescribed medications; and (3) the record showed Plaintiff went on bike rides in mid-2015 and an October 2014 video showed her driving to the grocery store and tanning salon. AR at 35.

           (a)     *Conservative Treatment*

The ALJ found that "although the claimant has received treatment for the allegedly disabling impairments, including reported therapeutic injections and physical therapy, that treatment generally and more recently has been routine and conservative in nature with medication. A spine specialist also gave conservative recommendations of physical therapy and more movement." AR at 34. The ALJ concluded, "the claimant's use of medications does not suggest the presence of impairments that are more limiting than found in this decision." *Id*. at 34.

The ALJ's reasoning is not clear and convincing, or supported by substantial evidence. Although the ALJ found Plaintiff's treatment should be considered conservative, on more than one occasion the Ninth Circuit has indicated that the kind of treatment Plaintiff has received for her back pain, including epidural injections, narcotic pain medication, and physical therapy, should not be considered conservative treatments. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2018) (holding that epidural and steroid injections should not be considered conservative treatment, as the court previously noted in *Garrison*); *Garrison v. Colvin*, 759 F.3d 995, 1015-16 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment," and holding that the ALJ erred by rejecting Garrison's pain testimony due to improvement with "conservative treatments" such as medication, injections, and physical therapy); *LaPierre-Gutt v. Astrue*, 2010 WL 2317918, *1 (9th Cir. June 9, 2010)

1  (expressing disbelief that treatment such as "'copious amounts' of narcotic pain medications,

2  occipital neve blocks and trigger point injections could truly be considered conservative treatment").

3  The record reflects that Plaintiff was receiving steroid injections to her cervical spine to

4  help relieve her pain until her stroke, when she could no longer receive the injections because

5  she was taking aspirin to prevent future strokes. AR at 374, 404, 802, 1131, 1179, 1189, 1193,

6  1405. Plaintiff has also been prescribed narcotic pain medications and benzodiazepines to relieve

7  pain and spasm in her neck and back. *Id*. at 389. The ALJ's conclusory assertion that Plaintiff's

8  treatment for her neck and back pain was "conservative" was therefore not supported by the

9  medical record.

10  (b)  *Use of Marijuana and Non-Prescribed Medications*

11  The ALJ found that the "medical record also indicates the claimant at times has not been

12  compliant with prescribed medication. Laboratory studies and self-reports indicate the claimant

13  has used marijuana and multiple non-prescribed medications." AR at 34 (citing AR at 810, 899,

14  1328-30). The ALJ noted that Plaintiff "has not been diagnosed with a substance use disorder,"

15  but "use of only medical marijuana for pain is one predicate for finding allegations of disabling

16  pain not credible." *Id*. (citing *Cole v. Astrue*, 395 Fed. Appx. 387 (9th Cir. 2010); *Donathan v.*

17  *Astrue*, 264 Fed. Appx. 556 (9th Cir. 2008)). The ALJ further noted that "the fact that

18  Washington State law now permits recreational use of marijuana in addition to medical use does

19  not render the above discussion invalid." *Id*.

20  Plaintiff points out that the record contains three drug screens since the alleged onset

21  date, which were performed on September 26, 2013, April 20, 2015, and May 2, 2016. Only the

22  drug screen on April 20, 2015 was positive for marijuana, and that screen showed that Plaintiff

23  was also taking benzodiazepines and hydromorphone. AR at 814, 899. Thus, it does not appear

1  that Plaintiff was only taking marijuana for pain. Plaintiff pointed out that Dr. Mann's note on
2  the date of the April 2015 drug test confirmed that she was taking additional medications,
3  including benzodiazepines to reduce muscle spasms and MS contin (morphine) for pain. *Id*. at
4  796. Moreover, as the ALJ acknowledged, no physician has found evidence that Plaintiff abuses
5  marijuana. The Commissioner seemingly concedes as much, pointing out only that Plaintiff's
6  testimony was not discredited due to marijuana use but "it is one of many reasons that, when
7  combined, show Plaintiff's testimony is inconsistent with the record." (Dkt. # 14 at 7.) The Court
8  is not persuaded that evidence of Plaintiff's marijuana use on one occasion is a clear and
9  convincing reason for the ALJ to discount Plaintiff's testimony about the severity of her
10 symptoms.

11      Finally, Plaintiff asserts that the ALJ did not explain his conclusion that Plaintiff was
12 taking non-prescribed medication, as she tested positive for medication that was listed as
13 prescribed drugs on the screen itself. Specifically, in April 2015, Plaintiff tested positive for
14 benzodiazepines and morphine, which were listed as prescribed and discussed in Dr. Mann's
15 treatment notes. AR at 796, 814. In May 2016, Plaintiff tested positive for benzodiazepines,
16 morphine, and hydrocodone. Although the test states that these were "not indicated as prescribed
17 on the requisition form," Dr. Mann's notes for the same date show that Plaintiff was indeed
18 prescribed MS Contin (morphine) and Norco (a combination of a benzodiazepine and
19 hydrocodone). *Id*. at 1308, 1328. Although his note on this date does not discuss a
20 benzodiazepine, his earlier notes do refer to this prescription. *Id*. at 1314, 1320, 1321, 1324. In
21 addition, Dr. Mann reviewed Plaintiff's tests, and did not express concern that she was taking
22 non-prescribed medications. At the hearing, Plaintiff also testified that her doctor had not
23 mentioned anything to her about taking medications that were not prescribed. *Id*. at 796 (Dr.

Mann's note that "[o]piod/benzodiazepine agreement is signed . . . Appropriate prescriptions were filled today.").

Accordingly, the ALJ's finding that Plaintiff's use of marijuana and non-prescribed medications is not clear and convincing, and supported by substantial evidence. On remand, the ALJ should not use rely on these reasons as a basis for rejecting Plaintiff's testimony.

    (c)  *Plaintiff's Activities*

Finally, the ALJ found that Plaintiff "described daily activities in the medical record that are not entirely consistent with the reported severity of her limitation reported in forms completed in connection with the application and appeal, and are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR at 34. The ALJ noted that "[a]lthough the claimant has indicated she generally spends much of her time in bed or watching television, in mid-2015, she told a mental health provider that she was going out almost every day and going on bike rides, which she said helped. The medical record also refers to an October 2014 video showing the claimant driving to the grocery store and tanning salon." *Id*. at 35. In a footnote, the ALJ further noted that operating a vehicle to drive "indicate functioning at a level in excess of that alleged by the claimant." *Id.* at fn.1.

The Court finds that the fact that Plaintiff attempted to exercise by riding a bike, and was observed driving to the grocery store and a tanning salon, is not sufficient to undermine Plaintiff's testimony. Plaintiff has never reported that she is wholly unable to drive, but indicated on her function report that she is able to drive only short distances. AR at 305. Similarly, although Plaintiff told a counselor that she was going out every day to ride a bike which "really help[s]" decrease her depression and anxiety, Plaintiff has not alleged that she is completely incapacitated. *Id*. at 858. The counselor noted in June 2015 that Plaintiff's activity level reflected

an improvement in Plaintiff's functioning, which is consistent with the fact that Plaintiff did not indicate that she regularly rides a bike in her function report in December 2014. *Id.* at 305. The ALJ failed to ask Plaintiff about the frequency or duration of her bike rides, and therefore the record contains very little information about how this activity is inconsistent with Plaintiff's testimony. Without more, the Court finds that Plaintiff's limited activities are not a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony.

Accordingly, the Court finds that the ALJ has failed to identify legally sufficient reasons for rejecting Plaintiff's testimony. On remand, the ALJ should reevaluate Plaintiff's testimony in light of the direction provided by this Report and Recommendation.

**C. The ALJ Erred in Evaluating the Opinion of Theodore Becker, Ph.D.**

Theodore Becker, Ph.D., is a physical therapist who evaluated Plaintiff's physical capacities over time. AR at 917-1031, 1059. The record also contains an oral report from Dr. Becker which expands upon and highlights some of the key findings in his report. *Id*. at 1058-69. Dr. Becker described in detail the methodology and support for his testing, and opined that Plaintiff had given full effort based on validity measures. *Id*. at 1064. As a result of his testing, Dr. Becker opined that Plaintiff should be considered work intolerant: "On a more probable than not basis, she is disabled from competitive and full time work due to her medical condition. She does not have the capability for sedentary work." *Id*. at 1064. Dr. Becker explained that he tested Plaintiff performing activities and looked at her heart rate response, which established a "very severe and significant response in regard to dysfunctional tolerance for sustainable work." *Id*. at 1065. He noted that as Plaintiff performed testing over a two day period, she required increasing amounts of time of recovery and rest. *Id.* at 1064. He also described findings showing dysfunction in in her right leg and back (*id*. at 1066) and that testing showed she did not have the

ability to sustain a seated posture to perform sedentary work. *Id*. at 1066-67. He also noted deficits in her right upper extremity. *Id*.vat 1067. Finally, Dr. Becker noted her significant strength asymmetry in her right lower extremity and very significant presentation of physiological fatigue, especially associated with upright standing and/or walking, would preclude her" from jobs that required standing and walking most of the work day. *Id*. at 1069-70.

The ALJ considered Dr. Becker's report, but only afforded Dr. Beker's opinion "slight weight" because:

> [T]he medical record as a whole is not consistent with his findings of disabling limitations. As mentioned above, the claimant had a generally normal consultative medical examination and often appeared alert and in no acute distress and exhibited a normal gait and normal strength (Exs. 1F/12, 28, 39, 109, 111, 123; 3F; 4F/144; 7F/12, 13, 16, 19, 26, 50; 9F/27; 11F/8, 10, 45, 124; 12F/13, 18). The opinions of Dr. Karvelas and the DDS medical doctor, and the physician reviewer assessment are more persuasive for the reasons discussed above (Exs. 4A; 3F; 11F/124; 13F/31, 59, 68).

AR at 37.

Without more explanation, the ALJ's conclusory assertion that "the medical record as a whole is not consistent with [Dr. Becker's] finding" is insufficient to meaningfully explain the ALJ's reasoning. Although Plaintiff has had some normal findings in physical evaluations, Dr. Becker tested Plaintiff's physical capacities during two-day multiple hour tests showing that her physical capacity degraded over time, such that she would not be able to sustain prolonged work activity.

Even though Randall's opinion, as a physical therapist, is not entitled to the same deference as "acceptable medical sources" and an ALJ must only provide a germane reason to reject his opinion, the ALJ erred by failing to provide germane reasons for affording his opinion slight weight. *Molina*, 674 F.3d at 1111. On remand, the ALJ should review Dr. Becker's lengthy evaluation and more thoroughly articulate why the ALJ declines to adopt his opinion that

REPORT AND RECOMMENDATION - 16

Plaintiff is work intolerant, if such a conclusion is warranted. *See Revels*, 874 F.3d at 665-66 (holding that the ALJ failed to provide a germane reason for rejecting a physical therapist's functional capacity evaluation as inconsistent with the opinions of other physicians and objective evidence where the therapist had spent three and a half hours with the claimant and reviewed the medical records from other doctors).

### V.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's final decision be REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 25, 2019**. Objections, and any response, shall not exceed nine pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

Dated this 11th day of September, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge